UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MATTHEW CHARLES ROMANO,

                    Plaintiff,

   -v-                                             3:12-CV-1114

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                     OF COUNSEL:

HINMAN, HOWARD & KATTELL, LLP       JACQUELINE A. BAIN, ESQ.
Attorneys for Plaintiff
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902

OFFICE OF REGIONAL GENERAL COUNSEL   VERNON NORWOOD, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

     Plaintiff Matthew Charles Romano ("Romano" or "plaintiff") brings this action pursuant

to §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) &

1383(c)(3), to review a final determination of the defendant Commissioner of Social Security

denying his application for Social Security Disability benefits ("SSD"). The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.[1]

## II. BACKGROUND

Romano filed an initial application for SSD on June 21, 2007, when he was thirty years old. His alleged disabilities arose from depression and post-traumatic stress disorder ("PTSD") related to injuries he sustained on December 30, 2006.[2] He claimed that while working as a police officer in Johnson City, New York, he was assaulted and stabbed by two assailants. Romano's claim was initially denied on September 20, 2007. Upon his request, a hearing was conducted by video before an Administrative Law Judge ("ALJ") on May 7, 2009. The ALJ rendered a written decision on June 8, 2009, finding that he was disabled during the relevant time period and granting his claim for SSD.

However, in September 2009, a criminal indictment was filed in the Northern District of New York charging Romano with twenty counts of mail fraud in connection with his claim for disability benefits. In the indictment, the Government alleged that the injuries he sustained on December 30, 2006, were self-inflicted for the purpose of fraudulently obtaining disability benefits. After a trial, the jury found Romano guilty on seventeen counts.[3] In March 2011, based on information provided by the Office of Inspector General, the Social Security

---

[1] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

[2] Although he sustained multiple physical injuries during the incident, his claim of disability is only related to mental and psychological impairments allegedly caused by the incident.

[3] Romano notes that he was acquitted of identical criminal charges in state court.

Administration re-opened plaintiff's case and scheduled a new hearing. On April 21, 2011, a video hearing was conducted by the same ALJ who presided over the May 2009 hearing. Romano did not appear at the hearing because he was incarcerated. His attorney appeared on his behalf.

On June 15, 2011, the ALJ issued a written decision finding that Romano was not disabled within the meaning of the Social Security Act and discontinuing his benefits. Plaintiff appealed to the Appeals Council. On May 9, 2012, the Appeals Council issued an order denying his request for review. Thus, the ALJ's June 15, 2011, decision became the final decision of the Commissioner. Plaintiff filed this action on July 13, 2012.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is

conclusive. Id. Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

## B. Disability Determination—The Five Step Evaluation Process

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is

engaging in substantial gainful activity he is not disabled, and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged is substantial gainful employment, then Step Two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then Step Three requires the ALJ to determine whether, based solely on medical evidence, the impairment meets an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, Step Four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996). If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for Step Five. Id. This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant has the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant

can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

Where the alleged disability involves a mental impairment, there is a "special technique" that must be applied at Steps Two and Three and at each level of the administrative review process. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008); 20 C.F.R. § 404.1520a. This technique requires consideration of "four broad functional areas," including: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." Id. § 404.1520a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits." Kohler, 546 F.3d at 266 (quoting 20 C.F.R. § 404.1520a(d)(1)).

If, on the other hand, the claimant's mental impairment is deemed severe, "the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder." Id. (citing 20 C.F.R. § 404.1520a(d)(2)). If so, the claimant is disabled. Id. If not, the reviewing authority then assesses the claimant's RFC at Step Four. Id. (citing 20 C.F.R. § 404.1520a(d)(3)). The application of this special technique must be documented. 20 C.F.R. § 404.1520a(e).

Finally, a disability determination may be reopened for good cause within four years of the date of the initial determination. 20 C.F.R. § 404.988(b). As the initial determination in this case was made in September 2007, the Commissioner's decision to reopen the case in

March 2011 was timely. It is undisputed that the Commissioner had good cause to do so.

### C. Analysis

The ALJ ultimately found that Romano had not engaged in substantial gainful activity since December 30, 2006, the alleged onset date.[4] She further determined that he suffers only from depressive disorder, not from depressive disorder and PTSD as she found in her prior decision. The ALJ specifically discredited Romano's prior PTSD claims due to the intervening investigation, prosecution, and conviction for mail fraud, which suggested that his PTSD symptoms were fabricated.

The ALJ next determined that Romano's mental impairment did not meet any of those listed in Appendix 1 of the Regulations. She then found that he has an RFC that allows him to perform the physical demands of work at all exertional levels. The ALJ also found that, while his depression could cause some of the alleged symptoms, his overall claims of functional limitations were not credible and were "almost entirely undermined by the conviction—established patterns of fraudulent representations." R. at 16.[5] Finally, she determined that although plaintiff may be unable to perform any past relevant work, there are jobs available in the national economy that he can perform despite the limitations caused by his mental impairment. The ALJ thus concluded that Romano is not disabled within the meaning of the Social Security Act, and is therefore not entitled to benefits.

Romano claims that the ALJ erred at Step Two of the analysis when she found he does not suffer from PTSD. He claims that the ALJ inappropriately based her decision on the factual

---

[4] Romano worked part-time in a pizzeria after the December 2006 incident, but the ALJ determined that this did not constitute substantial gainful activity.

[5] Citations to "R." refer to the Administrative Record. ECF No. 6.

allegations contained in the federal criminal proceedings and not on the medical evidence in the record. He also faults the ALJ for failing to utilize the services of a vocational expert and argues that the reports of his treating therapists, Judith Tanzer and Zoe Zerwekh, establishes his PTSD and disability within the meaning of the Social Security Act.

As an initial matter, Romano's suggestion that the ALJ was not permitted to question his credibility in light of the numerous fraud convictions is unpersuasive. His diagnosis of PTSD was based, at least partially, on representations he made to his therapists regarding the December 30, 2006, incident and his subjective complaints of symptoms suffered thereafter. A jury found him guilty of seventeen counts of fraud stemming from that very incident and the information he provided while seeking disability benefits thereafter.[6] Further, in a September 2009 report, the New York State Workers' Compensation Board quoted noted forensic pathologist Dr. Michael Baden, who opined "to a reasonable degree of medical certainty" that plaintiff's injuries were self-inflicted. R. at 145. In short, the ALJ's decision to discount the severity of plaintiff's PTSD symptoms and their impact on his functioning was not error and is consistent with the evidence elsewhere in the record.

Moreover, contrary to Romano's assertion, the ALJ's decision did not rest solely on the facts established during the separate criminal proceedings. There is substantial evidence in this record to support the ALJ's RFC finding and the conclusion that he is capable of performing jobs that exist in the national economy. He repeatedly informed counselors and independent examiners that, despite his mental impairment, he was able to care for himself, perform household chores, care for his two young children, cook, shop for

---

[6] On July 3, 2012, the United States Court of Appeals for the Second Circuit affirmed the seventeen mail fraud convictions and sentence of forty-eight months' incarceration. United States v. Romano, 487 F. App'x 607 (2d Cir. 2012) (summary order).

groceries, drive himself to appointments and work, exercise regularly, and manage his finances.

Plaintiff's mental impairment causes him to sometimes feel stressed when in crowds and public places. However, this does not prevent him from going to work or out in public when necessary. In an August 2007 report, workers' compensation consultant Dr. Manuel Saint Martin wrote: "Mr. Romano thinks that the psychotherapy sessions have helped to improve his emotional functioning. He is able to do activities such as going out in public, run errands at stores, jog and drive, which he could not do after the stabbing." R. at 327. Psychologist Mary Ann Moore evaluated plaintiff in September 2007 and noted that he "can follow and understand simple directions and instructions . . . perform simple tasks," and exhibited "general intact attention and concentration." R. at 350–51.

During an August 27, 2010, counseling session, he advised his therapist that he was working "many hours" at a pizzeria, which left "little time" for himself. R. at 599. He further reported that he had "recently set reasonable expectations and boundaries with his employer." Id. At the April 21, 2011, ALJ hearing, plaintiff's attorney reported that plaintiff "was ready to go back to work. He actually was at the point where there probably was going to be a cessation [of benefits] anyway . . . ." R. at 608. In fact, his attorney confirmed that plaintiff had a full-time construction job waiting for him when he was sentenced to a term of incarceration in 2011.

Finally, the ALJ's failure to employ the services of a vocational expert was not error. Indeed, the mere existence of a nonexertional impairment, such as Romano's depression, "does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986). The application of the

- 9 -

Medical–Vocational Guidelines and the necessity for a vocational expert "must be determined on a case-by-case basis." Id. at 605. "If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate." Id. An ALJ must seek guidance from a vocational expert if the nonexertional impairment has any more than a "negligible" impact on the claimant's ability to perform the full range of work. Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013). "A nonexertional impairment is non-negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Id. (internal quotation marks and alteration omitted).

As noted above, there is substantial evidence in the record to support the RFC determined by the ALJ. Likewise, the evidence supports the ALJ's conclusion that Romano's mental impairment did not narrow his possible range of work to the point of depriving him of meaningful employment opportunities. Plaintiff was able to work "many hours" at a pizzeria and was ready to begin working a full-time construction job when he was sentenced in 2011. Further, the reports of the consultative examiners similarly show that his limitations did not result in an additional loss of work capacity.

In short, the Medical–Vocational Guidelines adequately reflected plaintiff's condition, and the failure to utilize the services of a vocational expert was not error. See Selian, 708 F.3d at 422 (finding no error in the ALJ's decision not to use a vocational expert because, "[a]lthough the ALJ noted that Selian suffered from a mental illness, she concluded that the evidence established that Selian could perform the basic mental demands of unskilled work, such as following simple instructions, and responding appropriately to supervisors and coworkers in usual work situations" (internal quotation marks omitted)).

## IV. **CONCLUSION**

The ALJ's determination that plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record.

Therefore, it is

ORDERED that

1. The Commissioner's decision denying plaintiff disability benefits is AFFIRMED; and

2. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

Dated: January 30, 2014
       Utica, New York.

United States District Judge